**\*\* E-filed {date} \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SPECIALIZED BICYCLE COMPONENTS,<br><br>    Plaintiff,<br>  v.<br><br>DAVID BARTON DBA BUZZBOYSALES;<br>et al.,<br><br>    Defendants.<br>_____/ | No. C10-05725 HRL<br><br>**ORDER THAT CASE BE REASSIGNED TO A DISTRICT JUDGE**<br><br>**REPORT AND RECOMMENDATION** |

    In December 2010, Specialized Bicycle Components Corp, ("Specialized" or "plaintiff") brought this suit alleging trademark infringement, counterfeiting and dilution against Chuck Gibson aka David Barton, doing business as BuzzBoySales on Ebay.com ("Gibson" or "defendant"). Specialized alleges that Gibson used its trademark to sell counterfeit versions of its high-end bicycle equipment and accessories online. It states seven claims for relief: (1) trademark counterfeiting and infringement pursuant to the Lanham Act, 15 U.S.C. § 15 U.S.C. §§ 1114-1117; (2) unfair competition and false designation of origin under 15 U.S.C. §§ 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) trademark dilution pursuant to Cal. Bus. & Prof. Code § 14247; (5) unfair competition pursuant to Cal. Bus. & Prof. Code § 17200 *et seq.*; (6) common law trademark infringement; and (7) common law unfair competition. Amended Complaint, Dkt. No. 12. Plaintiff seeks (1) statutory damages of $8,000,000 for the infringement claims pursuant to 15 U.S.C. § 1117(c); (2) a permanent injunction pursuant to § 1116 of the Lanham Act; and (3) attorney's fees in the amount of $22,356.70 and costs in the amount of $259.49 pursuant to § 1117 of the Lanham

1  Act. Defendant Chuck Gibson was served with the Amended Complaint on February 10, 2011, but
2  has yet to appear in this action. See Dkt. No. 16. On March 24, 2011, Specialized moved for entry of
3  default as to Gibson, which the Clerk of Court entered on March 28, 2011. Dkt. Nos. 20, 23.
4  Plaintiffs now move to default judgment against Gibson. Dkt. No. 44.

Because not all parties have consented to the undersigned's jurisdiction, the undersigned orders that the case be REASSIGNED to a district judge. For the reasons stated below, the undersigned recommends that the motion be GRANTED.

**LEGAL STANDARD**

Generally, a party is in "default" if the party has failed to plead or "otherwise defend" in a timely fashion to a pleading seeking affirmative relief against the party. Fed. R. Civ. P. 55(a).

After entry of default by the Clerk, courts are authorized to grant default judgment in their discretion. See FED. R. CIV. P. 55; Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). A court may consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

**DISCUSSION**

A. Entry of Default Judgment

The Eitel factors favor entry of default judgment. Plaintiff's claims have merit, and all are sufficiently pled. Once the Clerk of Curt enters default, all well-pleaded allegations regarding liability are taken as true except as to the amount of damages. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002); Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). The court finds that plaintiff has adequately pled each of its claims for relief. Since all liability-related factual allegations are taken as true, there can be no dispute over material facts. Additionally,

plaintiff would be prejudiced if default is not entered because the defendant has refused to participate in this action since it was filed over a year ago, and plaintiff has no other avenue for relief. Further, there is no evidence that defendant's failure to appear and defend himself is due to excusable neglect. Plaintiff requested and received early discovery to identify the defendant, and has served all papers on every known name and address used by defendant. Since the defendant has failed to appear in this action, plaintiff's only recourse is a default judgment. While the Federal Rules of Civil Procedure favor judgments on the merits, defendant's refusal to participate in this litigation render such a decision impossible.

Finally, the fourth Eitel factor considers the sum of money at stake in the action in relation to the seriousness of defendant's conduct. "[D]efault judgment is disfavored when a large amount of money is . . . unreasonable in light of defendant's actions." United States v. Ordonez, 2011 U.S. Dist. LEXIS 50765, *6 (E.D. Cal. May 11, 2011). Here, plaintiff requests quite a large sum: $8,000,000.00 in statutory damages, trebled, as well as attorney's fees and costs. Plaintiff has documented nearly 400 sales by defendant of infringing goods on Ebay.com to support its request. See Dkt. No. 44, Exh. 1 ¶ 8 ("Love Declaration"). Given the likelihood that defendants' conduct may cause confusion or mistake or otherwise deceive customers, and defendants' failure to comply with the judicial process or to participate in any way in the present litigation, the imposition of a substantial monetary award is justified. But, "the size of the award is limited by what the Court considers just." Coach, Inc. v. Diana Fashion, 2011 U.S. Dist. LEXIS 143182 (N.D. Cal. Dec. 13, 2011). As discussed below, the court considers $1,000,000 in statutory damages to be an appropriate award which is proportionate to defendant's conduct.

Accordingly, all of the Eitel factors weighing in favor of plaintiff's application, the court recommends that the plaintiff's motion be granted.

B. Relief Requested

    1. Statutory Damages

Specialized requests $8,000,000 in statutory damages pursuant to 15 U.S.C. § 1117(c). Damages inquiries under this section look to both compensatory and punitive considerations. Coach, Inc., 2011 U.S. Dist. LEXIS 143182 at *10 (citing Sara Lee Corp. v. Bags of New York, Inc., 36 F.

3

Supp. 2d 161, 165 (S.D.N.Y. 1999). In cases involving a counterfeit mark, like this one, the Lanham Act permits a plaintiff to elect statutory damages instead of compensatory damages at any time before final judgment. 15 U.S.C. § 1117(c). When a court grants default judgment, statutory damages are particularly appropriate because there may be a lack of information regarding defendant's sales and profits. See Coach, Inc, 2011 U.S. Dist. 143182, *11. A court may award statutory damages ranging from $1,000 to $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." Id. For each a willful violation, a court may award up to $2,000,000. Id. The Lanham Act does not provide guidelines for courts to use when determining an appropriate award. When a plaintiff elects statutory damages, courts therefore have broad discretion in determining the appropriate amount of damages. See id. at *12-13.

Here, Specialized requests a statutory damage award of $8,000,000.00, based on the statutory maximum for willful counterfeiting violations. Plaintiff claims that since Gibson has sold items bearing at least four of Specialized's registered marks, defendant is liable for up to $2,000,000.00 for each willful infringement or $8,000,000.00 in total. Dkt. No. 44, p. 9. Specialized further contends that a large award is necessary to deter the defendant and others from selling counterfeit goods and damaging the goodwill Specialized has built in its company and products. Id. p. 5.

While the court takes as true plaintiff's well-pleaded allegation that the defendants willfully infringed upon and counterfeited Specialized's marks, it does not find the requested $8,000,000.00 in statutory damages reasonable. See Coach Servs. V. La Terre Fashion, No. C 10-02129, 2011 U.S. Dist. LEXIS 126763 (finding plaintiff's request for $3,000,000.00 in statutory damages unreasonable in light of three willful violations, and reducing award to $45,000); Herman Miller, Inc. v. Alphaville Design, Inc., No. C 08-03437, 2009 U.S. Dist. LEXIS 103384, *9 (N.D. Cal. Oct. 22, 2009) (awarding $500,000 in statutory damages for two trademarks infringed, or 250 times the statutory minimum); Philip Morris U.S.A., Inc. v. Castworld Prods., 219 F.R.D. 494, 502 (C.D. Cal. 2003) (awarding $2,000,000.00 in statutory damages where plaintiff could show that 8,000,000 counterfeit items were sold for millions of dollars in total). Here, Specialized has provided evidence

1  to support its claim that four marks were infringed and at least 389 items bearing the counterfeit
2  marks were sold by defendant, representing a total profit of $40,560, which weighs in favor of a
3  larger award. Love Declaration ¶ 8, Dkt. 44, Exh. A. See also Coach Servs., 2011 U.S. Dist. LEXIS
4  126763, *9-10 (discussing the relevance of plaintiff's efforts to determine the extent of defendant's
5  infringing acts in determining an award).

6      In light of the four trademarks infringed, the undersigned recommends that an award in the
7  amount of $250,000.00 per counterfeit mark, totaling $1,000,000.00 be awarded. The undersigned
8  feels that this amount bears a plausible relationship to defendant's infringing activity and the profits
9  defendant may have realized from those activities, and recognizes defendant's willful conduct. Such
10 damages will also serve to deter future infringement by the defendant or others. Further, a statutory
11 damage award of $250,000 per violation is proportional to default judgments awarded in other,
12 similar actions. See Herman Miller, Inc., 2009 U.S. Dist. LEXIS 103384, *9 (awarding $250,000
13 per counterfeited mark where plaintiff had provided evidence defendant's willful violation, sales
14 and profits); Coach, Inc., 2011 U.S. Dist. LEXIS 143182, *13 (awarding $50,000 for three
15 counterfeit marks where plaintiff had very little evidence of defendant's sales and profits).

16     2.  Injunctive Relief

17     In addition to damages, Specialized requests a permanent injunction enjoining the defendant
18 from using its trademark in connection with the sale of and offer for sale of infringing products. The
19 Lanham Act gives the court "power to grant injunctions, according to the rules of equity and upon
20 such terms as the court may deem reasonable, to prevent the violation" of a trademark holder's
21 rights. 15 U.S.C. § 1116(a). "Permanent injunctions are routinely granted in cases like the instant
22 one where a defendant has not appeared in the action at all." Coach, Inc., 2011 U.S. Dist. LEXIS
23 143182 at *13 (citing Philip Morris U.S.A., Inc. v. Castworld Prods., 219 F.R.D. 494, 502 (C.D.
24 Cal. 2003)). Accordingly, the undersigned recommends that Specialized's request for a permanent
25 injunction enjoining Gibson from using the Specialized logo in connection with the sale and offer
26 for sale of infringing products be granted.

27     3.  Attorney's Fees and Costs

28

1    Specialized also requests costs under 15 U.S.C. § 1117(a), which authorizes the recovery of
2 the costs of an action for the violation of any right of the registrant of a trademark. Specialized is
3 entitled to the costs of this action. See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th
4 Cir. 1993). The undersigned recommends that plaintiff be permitted to submit its Bill of Costs in
5 accordance with Civil Local Rule 54-1.

6    15 U.S.C. 117(a) also permits the award of reasonable attorney's fees "in exceptional cases."
7 Exceptional cases include those where the infringement is "malicious, fraudulent, deliberate, or
8 willful." Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 621 (9th Cir. 1993); Lindy Pen, 982 F.2d at
9 1409. Here, Specialized has pled that Gibson willfully sold 223 cycling jerseys and 166 pairs of
10 cycling shorts bearing counterfeited marks. Specialized has provided a declaration from attorney
11 Paul Schroeder that he worked 33.3 hours on this matter, for a fee of $7492.50. Specialized's
12 general counsel attested that Specialized initially retained other outside counsel and incurred
13 $14,864.20 in fees. However, since that declaration does not provide a copy of an invoice, number
14 of hours worked, or the hourly fee charged by this outside counsel, this court finds that a fee award
15 should be limited to $7492.50.

**CONCLUSION**

Based on the foregoing, the court ORDERS that this case be reassigned to a district judge. The undersigned further RECOMMENDS that the plaintiff's motion be granted, that statutory damages be awarded in the amount of $1,000,000.00, that defendant be permanently enjoined from future infringing activities, and that the plaintiff be awarded attorney's fees of $7492.50 and costs. Pursuant to Federal Rule of Civil Procedure 72(b), any party may serve and file objections to this Report and Recommendation within fourteen days after being served.

Dated: January 6, 2012

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C10-05725 HRL Notice will be electronically mailed to:**

Paul Schoeder          pschroeder@chirschlaw.com
Clifford Hirsch        chirsch@hcmslegal.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**